NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAMIAN D., | |
| Plaintiff, | |
| v. | Civil Action No. 25-4279 (RK) |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Damian D.'s[1] ("Damian" or "Plaintiff")

appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final

decision denying Damian's request for disability insurance benefits. (ECF No. 1.) The Court has

jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral

argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the

Commissioner's decision.

## I.    BACKGROUND

In this appeal, the Court must answer the following question: Did Administrative Law

Judge Paul Goodale ("the ALJ" or "Judge Goodale") properly analyze, with substantial evidence,

Damian's residual functional capacity under the Social Security Act?

### A.    PROCEDURAL POSTURE

On February 3, 2022, Damian filed an application for a period of disability and disability

insurance benefits, alleging an onset date of October 17, 2020. (Administrative Record ("AR") at

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

90.)[2] Damian was 47 years old as of the alleged onset date and 48 years old when he filed his application. (*Id.*) The Social Security Administration (the "Administration") denied the requests both initially, (*id.* at 111–15), and on reconsideration, (*id.* at 119–22). Thereafter, Damian requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 127.) On January 11, 2024, Damian, who was represented by counsel, and Timothy Andenmatten, a vocational expert ("VE"), testified at a hearing before Judge Goodale. (*Id.* at 42–83.) On May 1, 2024, Judge Goodale issued a written decision finding that Damian was not disabled. (*Id.* at 14–35.) The Administration's Appeals Council denied Damian's request to review Judge Goodale's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on July 15, 2025. (ECF No. 5.) Damian then filed his moving brief, ("Pl. Br.," ECF No. 6), the Commissioner filed an opposition, ("Opp.," ECF No. 8), and Damian replied, ("Reply," ECF No. 9).

### B.   JUDGE GOODALE'S DECISION

As stated in his May 1, 2024 decision, Judge Goodale held that Damian was not disabled under the prevailing Administration regulations. (*See generally* AR at 14–35.) To reach this conclusion, Judge Goodale analyzed Damian's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. § 416.920(a)(4)(i)–(v). Damian disputes Judge Goodale's conclusions at Step Four. (*See* Pl. Br. at 22–32.) For the sake of completeness, the Court will summarize each step of Judge Goodale's analysis before focusing on the specific portions thereof with which Damian takes issue.

At Step One, Judge Goodale found that Damian had not engaged in substantial gainful activity since February 3, 2022, his application date. (AR at 19 (citing 20 C.F.R. § 416.971 et

---

[2] The Administrative Record ("Record" or "AR") is docketed at ECF Nos. 5-1 through 5-16. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

2

seq.).) At Step Two, Judge Goodale found that Damian suffers from six severe impairments: (1) systemic lupus erythematosus; (2) degenerative disc disease of the cervical spine, "status-post 2016 and 2021 discectomy and fusion procedures"; (3) degenerative disc disease of the lumbar spine; (4) "status-post partial removal and reconstruction of colon"; (5) right trigger thumb, "status-post 2020 trigger thumb release"; and (6) depressive and anxiety/panic disorders.[3] (*Id.* at 19–20 (citing 20 C.F.R. § 416.920(c)).) Judge Goodale concluded that these severe impairments "significantly limit" Damian's ability to perform basic work activities. (*Id.* at 20.)

Also at Step Two, Judge Goodale found that Damian has six non-severe impairments: (1) hypertension, (2) shortness of breath or other respiratory issues such as bronchitis, (3) multiple ophthalmic/vision impairments, (4) chronic kidney disease, (5) right shoulder impingement syndrome and right rotator cuff rupture, and (6) obesity. (*Id.* at 20–21.) In reaching that conclusion, Judge Goodale considered Damian's testimony and extensive treatment records. (*Id.* (citing AR at 329–30, 484–85, 488, 515, 559, 562, 1148, 1153, 1308–09, 1312, 1336, 1353–58, 1587, 1739, 1742, 1745).)[4]

With respect to the first five non-severe impairments, Judge Goodale found that Damian's treatment records "document few, if any, complaints by him of any . . . symptoms attributed to

---

[3] For the sake of clarity, the Court notes that the "status-post" terminology Judge Goodale uses in identifying certain of Damian's severe impairments is commonplace in the social security disability context. *See, e.g.*, *Frederick F. v. Comm'r of Soc. Sec.*, No. 20-11500, 2022 WL 445538, at *3 (D.N.J. Feb. 14, 2022); *Jorge M. v. Kijakazi*, No. 21-13794, 2022 WL 4536267, at *3 (D.N.J. Sept. 28, 2022). In this context, as in medicine, "[t]he term 'status post' is 'clinical shorthand referring to a state that follows an intervention . . . or condition'" and "indicates that a patient had a certain procedure or condition at some point in the past, i.e., his or her status is post (or after) having had a procedure or condition." *Nelson v. Cross*, No. 14-228, 2015 WL 11090367, at *7 (D. Neb. Oct. 28, 2015) (omission in original) (citation omitted).

[4] The treatment records that Judge Goodale cites include records from Damian's primary care physician, rheumatologist, ophthalmologist, orthopedist and pain management physicians, and gastroenterologist.

[these impairments] during the relevant period since his application." (*Id.* at 20; *see id.* at 20–21.) Specifically, Judge Goodale observed that Damian's hypertension is treated with prescription medication and "has repeatedly been described as asymptomatic." (*Id.* at 20 (citing AR at 330, 1153, 1309, 1587).) Second, Judge Goodale noted that medical records support a "past history of chronic bronchitis" but that "this alleged impairment is not established by objective medical evidence from an acceptable medical source" and treatment records reflected "few, if any," complaints by Damian about "shortness of breath or other respiratory issues" since his application date. (*Id.* (citing AR at 329).) Third, Judge Goodale considered Damian's diagnoses of "multiple ophthalmic/vision impairments, including blepharitis, iritis/iridocyclitis of the right eye, and age-related nuclear cataracts" and his testimony that he experiences sensitivity to light and blurriness of vision when reading. (*Id.* (citing AR at 485, 1312).) Judge Goodale found these impairments non-severe because Damian's ophthalmologist "has repeatedly observed [Damian] to exhibit intact or nearly intact visual acuity in both eyes with the aid of his corrective lenses, with normal visual fields to confrontation," and treatment records documented only two complaints of light sensitivity and "few, if any," complaints of blurry vision. (*Id.* at 20–21 (citing AR at 484, 559, 562, 1308, 1742).) Next, Judge Goodale noted that Damian has been diagnosed with chronic kidney disease, right shoulder impingement syndrome, and a right rotator cuff rupture, but he found these impairments non-severe because Damian had not testified about any symptoms, limitations, or problems related to the impairments, nor had Damian complained of such symptoms to his treating physicians. (*Id.* at 21 (citing AR at 488, 1312).)

Finally, with respect to Damian's sixth non-severe impairment, obesity, Judge Goodale explained that Damian "is obese, with a Body Mass Index (BMI) that exceeds 30," and his "BMI

has remained below 40, the threshold for morbid obesity," throughout the relevant period. (*Id.* (citing AR at 488, 515, 1148, 1336, 1745).) Based on the medical evidence of record, Judge Goodale concluded that Damian's obesity is a non-severe impairment because it "does not . . . itself significantly limit[] [Damian's] mobility or otherwise cause[] any significant limitations of his ability to perform basic work activities." (*Id.*); *see* 20 C.F.R. 416.922(a). Nonetheless, Judge Goodale considered that Damian's obesity "may exacerbate his other impairments, resulting in greater symptoms and limitations than those impairments might otherwise cause on their own." (AR at 21 (citing SSR 19-2p, 2019 WL 2374244 (May 20, 2019)).)

At Step Three, Judge Goodale determined that Damian does not have "an impairment or combination of impairments" that qualifies under the Administration's listed impairments, set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (*Id.* (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926); *see id.* at 21–23.) Judge Goodale considered, but found inapplicable, the Administration's Listings for four physical impairments (systemic lupus erythematosus, "disorders of the skeletal spine resulting in compromise of a nerve root," "lumbar spinal stenosis resulting in compromise of the cauda equina," and "weight loss due to any digestive disorder") and two mental impairments ("depressive, bipolar and related disorders" and "anxiety and obsessive-compulsive disorders"). (*Id.* at 21 (citing Listings §§ 1.15, 1.16, 5.08, 12.04, 12.06, 14.02).)

In analyzing the mental impairment Listings, Judge Goodale reviewed Damian's consultative psychological evaluations (completed by psychologist Chrisopher Williamson, Psy.D., in August 2022, and psychiatrist Zulfiqar Rajput, M.D., in February 2023), the treatment records of Damian's mental health treatment providers and primary care physician, and Damian's subjective statements. (*Id.* at 22–23; *see id.* at 573–76, 1353–58.) Judge Goodale found that Damian is neither "markedly" nor "extremely" limited with respect to any of the relevant areas of

5

mental functioning. (*Id.* at 22–23); *see* Listings § 12.00(A)(2)(b), (F). Instead, he found Damian "has no limitation" in understanding, remembering, or applying information; has mild limitations in the categories of interacting with others and adapting or managing oneself; and has a moderate limitation in concentrating, persisting, or maintaining pace. (AR at 22–23.) In concluding that Damian has no limitation with respect to understanding, remembering, or applying information, Judge Goodale noted, for example, that Damian "himself reported that he follows instructions very well," and "mental health treatment providers have repeatedly observed [Damian] to exhibit normal thought processes and perceptual reasoning, with intact cognitive functioning." (*Id.* at 22.) Judge Goodale further reasoned that Damian's impairments have caused "only mild limitation" in the domain of adapting or managing oneself, in light of the record evidence such as Damian's self-reports that he "handles stress and changes in routine fairly well" and Damian's treatment records "show[ing] that his symptoms have responded fairy well to his psychotropic medications during this period." (*Id.* at 23.) Judge Goodale finally concluded that "[t]he record does not establish that [Damian's] impairments have resulted in . . . minimal capacity to adapt to changes in his environment or to demands not already part of his daily life," and thus Damian's mental impairments are not sufficiently "serious and persistent" to satisfy the alternative criteria for the relevant Listings. (*Id.*); *see* Listings § 12.00(A)(2)(c), (G).

As a precursor to Step Four, Judge Goodale concluded, based on "careful consideration of the entire record," including Damian's hearing testimony, the objective medical evidence, medical opinions, and prior administrative medical findings ("PAMFs"), that Damian has the residual functional capacity ("RFC") to perform "light" work, *see* 20 C.F.R. § 416.967(b), but that any job he performs has to be limited in specified ways:

> The claimant can occasionally stoop, crouch, crawl or kneel, and can frequently
> balance. He can occasionally climb ramps or stairs, but should not climb ladders,

ropes or scaffolds at all. He can do frequent handling, grasping and fingering with the right hand. He should avoid concentrated exposure to workplace hazards such as dangerous machinery (excluding motor vehicles) and unprotected heights. The claimant can do simple, routine, repetitive work tasks involving only simple work-related decisions, and no more than occasional changes in the work setting. He should not do assembly-line type work (i.e., work in close tandem with coworkers at a pace that is outwardly set), but could do individual table or bench work.

(AR at 23–24; *see id.* at 23–33). In making this RFC determination, Judge Goodale found that Damian's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Damian's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 25; *see id.* at 23–33); 20 C.F.R. § 416.929.

With respect to Damian's physical impairments, Judge Goodale considered Damian's reported symptoms—namely, shortness of breath, back pain and muscle spasms, neck pain, right thumb pain and trigger finger symptoms, abdominal pain, drowsiness and fatigue—and concluded that the record evidence "tends to suggest that [Damian's] symptoms are not as severe, persistent or limiting as he has alleged." (AR at 27; *see id.* at 24–28 (citing AR at 329, 335–37, 351–52, 369–70, 428–30, 488, 514–19, 527, 541–43, 781, 1148, 1152–53, 1155, 1164–1310, 1336–38, 1340–46, 1355, 1379–80, 1559–60, 1587, 1590, 1592–93, 1600, 1634–35, 1667–72, 1699–1704, 1739–79, 1781–92); *id.* at 30–32 (citing AR at 90–98, 100–09, 246–57).)[5] For example, records showed that, while Damian "has repeatedly complained of . . . ongoing back problems," he has received various forms of treatment throughout the relevant period and "has experienced significant improvement in his . . . back pain." (*Id.* at 25–27 (citing AR at 514–19, 1757–79).) Judge Goodale recounted, *inter alia*, that repeated lumbar trigger point injections administered by Damian's

---

[5] Judge Goodale considered, for example Damian's hearing testimony; treatment records; diagnostic imaging results; history of treatments, procedures, and surgeries; PAMFs by state agency medical consultants and ophthalmological consultants; and the Third-Party Function Report completed by Damian's mother. (AR at 24–28.)

rheumatologist have provided "significant relief," including "relief lasting for two to three months after those injections," and Damian "reported experiencing improvement in his pain and stiffness during a visit to the pain management clinic in May 2023." (*Id.* at 26 (citing AR at 1305–10, 1739–56, 1763).) Similarly, Judge Goodale reasoned that, although Damian "has at times been observed to exhibit tenderness and spasms . . . [and] limited range of motion in his cervical and lumbar spine," his rheumatologist "has repeatedly observed him to exhibit negative straight leg raises, with good range of motion in his neck and good fist formation"; his pain management specialist "has repeatedly observed him to appear in no acute distress, and repeatedly observed him to exhibit a normal non-antalgic gait"; his primary care provider "has repeatedly observed him to appear in no apparent distress . . . [and] to exhibit a normal gait, with normal strength in his upper and lower extremities"; and Damian "has continued to cook/prepare meals, do the laundry and complete other household chores, . . . go shopping, and dress and bathe himself independently." (*Id.* at 27 (citing AR at 515, 519, 1148, 1152–53, 1306, 1309, 1355, 1587, 1590, 1593, 1596, 1600, 1739, 1742, 1745–46, 1758, 1764, 1770–71).)

Judge Goodale likewise evaluated the symptoms Damian attributed to his depressive and anxiety/panic disorders and concluded that "the relevant medical and other evidence of record . . . provides only limited support for [Damian's] testimony, and tends to suggest that his symptoms are not as severe, persistent or limiting as he has alleged." (*Id.* at 28; *see id.* at 28–30 (citing AR at 262–64, 355, 574, 758, 766–72, 775–77, 781–85, 1118–20, 1148, 1152–53, 1355, 1385–88, 1430, 1587, 1590, 1593, 1596, 1600); *id.* at 31–32 (citing AR at 90–98, 100–09, 246–57).) As relevant here and elaborated upon below, *see infra* Section III.B, Judge Goodale accounted for and found persuasive the PAMF of state agency psychological consultant Dr. J. Patrick Peterson, Ph.D., J.D., in reaching his conclusions about Damian's mental impairment

symptoms, including in making the RFC determination that Damian remains able to perform simple work notwithstanding his concentration and persistence limitations. (AR at 31–32 (citing AR at 103–04, 106–08).)

Based on his assessment of the record and RFC determination, Judge Goodale concluded at Step Four that Damian is not capable of performing his past relevant work as a cook or cashier checker. (*Id.* at 33 (citing 20 C.F.R. § 416.965).) Both occupations would require the ability to perform "medium" work, while Judge Goodale found Damian limited to "light" work. (*Id.*; *see id.* at 76); 20 C.F.R. § 416.967(c).

Finally, at Step Five, Judge Goodale found that, given Damian's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Damian] can perform." (AR at 33 (citing 20 C.F.R. §§ 416.969, 416.969a).) Specifically, the VE testified, and the ALJ agreed, that Damian is capable of working as a routing clerk, mail clerk, and "marker." (*Id.* at 34.) Judge Goodale accordingly concluded that Damian was not under a disability from his application date of February 3, 2022, through the date of the decision. (*Id.* (citing 20 C.F.R. § 416.920(g)).)

## II.    **LEGAL STANDARD**

### A.    **STANDARD OF REVIEW**

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v.*

*Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B.    ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or him past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 416.920(a)–(f)).). The claimant bears the burden of proof at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III.    DISCUSSION

As a precursor to Step Four of the disability determination process, Judge Goodale assessed Damian's RFC (residual functional capacity)—"the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1); *see* SSR 96-9p, 1996 WL 374185, at *1 (July 2, 1996). Damian argues that Judge Goodale's RFC determination is erroneous for two reasons. First, Damian contends that Judge Goodale inadequately accounted for two of his symptoms—fatigue and shortness of breath—by failing to credit his subjective statements about the same. (Pl. Br. at 22–27.) Second, Damian asserts that Judge Goodale failed to include off-task or absenteeism limitations in his RFC assessment despite crediting the opinions of the state agency psychologist consultant who found Damian moderately limited in the functional area of concentration and persistence. (*Id.* at 27–32.) Because "all other issues have been waived," the Court restricts its review to these RFC-specific arguments. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases). For the following reasons, neither argument persuades.

### A.    DAMIAN'S SYMPTOMS

Damian first argues that Judge Goodale did not properly credit his subjective statements about two symptoms, shortness of breath and fatigue. (Pl. Br. at 22–27.) He thus takes issue with

Judge Goodale's credibility determination under 20 C.F.R. § 416.929.[6]

As part of his RFC determination, the ALJ engages in a two-step assessment of the claimant's reported symptoms. 20 C.F.R. § 416.929(a), (d)(4). At the first step, not at issue here, the ALJ considers only objective medical evidence (and asks whether such evidence supports the existence of a physical or mental impairment that reasonably explains the symptoms the claimant reports). *Id.* § 416.929(a)–(b); SSR 16-3p, 2017 WL 5180304, at *3–4 (Oct. 25, 2017). If the first step is satisfied, the ALJ considers "all of the evidence presented," including the claimant's own statements, to determine how the claimant's symptoms limit his ability to work. 20 C.F.R. § 416.929(c)(3); *see id.* § 416.929(a), (c)(1); SSR 16-3p, 2017 WL 5180304, at *4–5. It is well established that the claimant's subjective statements about his symptoms "will not alone establish" the claimant's disability. 20 C.F.R. § 416.929(a); *see* SSR 16-3p, 2017 WL 5180304, at *2; *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 133 (3d Cir. 2021). The ALJ thus evaluates the claimant's credibility and "determines whether his complained-of symptoms are reasonably 'consistent with the objective medical evidence and other evidence.'" *Cosme*, 845 F. App'x at 133; *see* 20 C.F.R. § 416.929(c)(4); *Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 252 (3d Cir. 2006) ("[T]he ALJ must determine the extent to which a claimant is accurately stating the degree of pain [or other symptoms] or the extent to which he or she is disabled by it."). "If the ALJ finds the claimant's subjective complaints to be inconsistent with the objective medical evidence, he may

---

[6] Damian's first argument is imprecise. (*See, e.g.*, Pl. Br. at 22 (arguing that the ALJ "failed to comply with" applicable law and "failed in its symptom analysis"); Reply at 1 (asserting that Judge Goodale made "a symptom analysis error").) The Commissioner understandably mistook Damian to be making a Step Two argument (that the ALJ erred in finding his obesity and bronchitis, and related symptoms of fatigue and shortness of breath, non-severe), but Damian clarified in his reply brief that his appeal concerns Judge Goodale's analysis at Step Four and his RFC determination. (Opp. at 6–8; Reply at 1–2; *see* Pl. Br. at 24 (arguing that the ALJ, "[i]n finding bronchitis non-severe," ignored certain evidence relevant to Damian's shortness of breath).) In view of Damian's clarification, and his contention that Judge Goodale inadequately evaluated "the intensity and persistence" of his symptoms and his statements about the same, the Court understands Damian to be challenging the ALJ's credibility determination under 20 C.F.R. § 416.929.

discount them." *Cosme*, 845 F. App'x at 133; *see Keveanos v. Berryhill*, No. 18-3421, 2019 WL 1500624, at *11 (D.N.J. Apr. 5, 2019) ("An ALJ may reject, or only partially credit, subjective complaints if they are not credible in light of the other evidence of record." (citing *Schaudeck*, 181 F.3d at 433)).

"[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) (citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)); *see Barlow v. Comm'r of Soc. Sec.*, No. 13-538, 2014 WL 1225560, at *8 (D.N.J. Mar. 24, 2014) ("Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." (quoting *Hall v. Astrue*, 882 F. Supp. 2d 732, 736 (D. Del. 2012))). In view of the fact that the ALJ, unlike the reviewing court, observes the claimant during the administrative hearing, the ALJ's credibility determination is "entitled to great weight," *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009), and "virtually unreviewable on appeal," *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015). A claimant must satisfy a "heavy burden to establish that the ALJ's credibility determination should be reversed." *Id.* at 680; *see Carmelo R. v. Comm'r of Soc. Sec.*, No. 20-6874, 2022 WL 2358386, at *5 (D.N.J. June 30, 2022) ("To begin with, the bar for substantial evidence is 'not high.' And the bar is even lower when there is a challenge to an ALJ's credibility determination of a live witness." (citation omitted) (quoting *Biestek*, 587 U.S. at 103)).

Damian has not satisfied this heavy burden. As detailed above, Judge Goodale expressly and thoroughly considered Damian's fatigue and shortness of breath, explained the inconsistencies between Damian's subjective statements and the other evidence in the record, and concluded that neither symptom limited Damian to the extent he reported. For the following reasons, the Court

13

finds no basis to disturb Judge Goodale's credibility determinations, which are supported by substantial evidence and entitled to great deference.

Damian first argues that Judge Goodale inadequately considered his fatigue. In support of his argument, he merely restates the same subjective statements that Judge Goodale addressed in his decision, starting with his hearing testimony. First, Damian reiterates his testimony that he experiences fatigue and drowsiness as a result of his conditions and medications, such that he performs activities slowly and often while sitting, has difficulty completing tasks, and sometimes naps for one to one-and-a-half hours during the day. (Pl. Br. at 25–26 (citing AR at 64, 72–73).) He then points to additional statements he made about the same limitations—in his Function Report rather than during the administrative hearing. (*Id.* (citing AR at 258–60)); *see Edwin J. v. Comm'r of Soc. Sec.*, No. 24-9362, 2025 WL 2506278, at *8 (D.N.J. Sept. 2, 2025) ("The evidence that Plaintiff contends supports his statements mostly consists of additional statements that *Plaintiff made himself* elsewhere in the record. . . . By definition, these statements in [Plaintiff's] own words are not objective evidence; they are just his claimed symptoms. The ALJ did not err by not considering them at this step."). Judge Goodale specifically considered both the testimony and Report statements that Damian raises. (AR at 24–26 (citing AR at 262–63).) Damian finally cites his self-reports as set forth in certain treatment records from June–August 2022, wherein he told healthcare providers that his pain causes "irregular sleep," and his medications cause daytime drowsiness. (Pl. Br. at 26 (citing AR at 769, 781, 784, 1100, 1110)); *see Morris v. Barnhart*, 78 F. App'x 820, 824 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion."). Judge Goodale analyzed these records (and more), and Damian's statements therein, in assessing Damian's fatigue and resulting RFC. (AR at 26–28 (citing AR at 758, 766–71, 781, 783, 1118–20).)

14

Importantly, Judge Goodale did not entirely reject Damian's statements about his fatigue. Instead, he concluded, based on the record evidence and inconsistencies in Damian's own statements, that fatigue did not limit Damian's capacity to work to the extent he reported. For example, Judge Goodale emphasized that Damian, per his own testimony, "remains able to handle personal needs," even if "these things take him a little longer to complete due to his impairments." (*Id.* at 25.) Judge Goodale similarly noted that, notwithstanding Damian's fatigue, and per his hearing testimony and Function Report statements, Damian "has continued to cook/prepare meals, do the laundry and complete other household chores, . . . go shopping, and dress and bathe himself independently." (*Id.* at 27; *see id.* at 64–65, 259–61.) In the relevant portion of his Function Report, Damian stated that he sweeps, mops, and irons, just that he "take[s] [his] time" doing so. (*Id.* at 260.) Judge Goodale also noted that Damian "reported that he continues to watch television, an activity which tends to require sustained attention, and reported that he generally finishes things that he starts." (*Id.* at 29 (citing AR at 262–63); *see also id.* at 263 (Damian stating in his Function Report that he follows written and spoken instructions "very well").)

In short, Judge Goodale did not disagree that fatigue has limiting effects for Damian; he simply concluded that Damian's fatigue is "not as severe, persistent or limiting as he has alleged." (*Id.* at 27.) "The Court finds no error in the ALJ's determination. Plaintiff's own statements belie his argument that his disabilities have rendered him incapable of work." *Gullace v. Colvin*, No. 15-7630, 2017 WL 714356, at *13 (D.N.J. Feb. 23, 2017); *see Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) ("Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible."); *Muschko v. Comm'r of Soc. Sec.*, No. 20-2771, 2021 WL 3666638, at *3 (3d Cir. Aug. 18, 2021) (holding that ALJ's credibility determination was

supported by substantial evidence where ALJ "noted [claimant's] subjective complaints but discounted them to the extent they were contradicted by . . . [claimant's] representations that he drove, ran errands, went grocery shopping, and performed yard work").

Similarly, Judge Goodale found inconsistencies in Damian's statements that his medications cause or exacerbate his fatigue. Judge Goodale first acknowledged that Damian "complained of drowsiness caused by one of his medications during a clinic visit in August 2022." (AR at 26–27 (citing AR at 781); *see id.* at 781 (August 31, 2022 treatment record, noting that Damian said his medication "makes him tired and sleepy during daytime"), 1110 (identical August 18, 2022 treatment record, with same statements by Damian).) Judge Goodale found, however, that Damian's "treatment records otherwise document few, if any, complaints by him of this alleged side-effect during the relevant period since his application date." (*Id.* at 27.) Damian does not argue otherwise. He does not identify any treatment records that support that he complained of this side effect other than in August 2022, and he instead cites the same treatment records that Judge Goodale specifically reviewed in assessing Damian's medications and their effects on him. (*Compare id.* at 28 (citing AR at 758, 766–71, 781–85, 1118–20), *with* Pl. Br. at 26 (citing AR at 769, 781, 784, 1100, 1110).)

Those treatment records, as Judge Goodale explained, offer substantial support for his credibility determination. During the same August 31, 2022 appointment, Damian "reported that his sleep was fair." (AR at 28 (citing AR at 781, 783).) In October 2022, Damian "reported experiencing difficulty falling asleep, but reported being able to sleep for 8 hours once he has fallen asleep," and in April 2023 he "reported . . . adequate sleep." (*Id.* (citing AR at 1118, 1386–87).) Based on this and other evidence, and the inconsistencies therein, Judge Goodale properly concluded that Damian's "statements concerning the intensity, persistence and limiting effects of

16

these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 25); *see Burns v. Barnhart*, 312 F.3d 113, 130 (3d Cir. 2002) ("With this contradictory testimony and the lack of significant medical evidence or a medical opinion fully supporting his subjective assessment of his limitations or complaints of pain, we cannot say that substantial evidence did not support the ALJ's ruling or his rejection of parts of [claimant's] testimony as not fully credible.").[7]

Damian's arguments about his shortness of breath suffer from the same fatal flaw. He primarily restates his testimony that, "due to shortness of breath, he cannot walk for long," and he uses "inhalers and nebulizers . . . Albuterol, a Flovent pump[,] and a breathing machine." (Pl. Br. at 24 (citing AR at 64).) In support of the latter assertion, Damian cites one non-testimony piece of evidence—a treatment record from March 2021 (about a year before his February 2022 application for disability benefits) that lists those medications and includes chronic bronchitis as part of his medical history summary. (*Id.* (citing AR at 329–30).) Damian contends that Judge Goodale "ignor[ed]" this evidence and "did not evaluate the intensity and persistence of [his] shortness of breath on his ability to work." (*Id.*)

Damian's argument does not square with the record. Judge Goodale explicitly considered

---

[7] Relying on this evidence, Damian asserts that "[f]atigue is a known symptom of both lupus and obesity" and "[f]atigue is a known side effect" of several medications he takes. (Pl. Br. at 25–26; *see id.* at 24.) It is unclear whether Damian believes these vague, generalized statements of "known" side effects and symptoms themselves reflect objective evidence of fatigue or otherwise bolster his subjective statements about fatigue. Either way, neither assertion saves the day. The relevant question is how fatigue functionally limits Damian personally and, more specifically for purposes of this appeal, how the ALJ erred in his analysis. *See* SSR 16-3P, 2017 WL 5180304, at *4 ("[S]ome individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments . . . ."); *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (concluding that remand was not warranted where claimant "relied on the language of [a Social Security Ruling] stating that obesity *can* impair one's ability to perform basic work activities rather than specifying *how* her obesity or headaches affected her ability to perform basic work activities"). The fact that Damian's conditions and medications are "known" to cause fatigue is of no moment.

the same subjective statements and record evidence that Damian cites. (AR at 20 ("During the hearing, the claimant also testified that he gets short of breath when walking more than twenty to thirty minutes due to bronchitis, further stating that his bronchitis is treated with multiple inhalers, and that he also uses a breathing machine at times. . . . [R]ecords show that the claimant has reported having past history of chronic bronchitis . . . ." (citing AR at 329)); *see id.* at 25.) He evaluated the intensity and persistence of Damian's reported shortness of breath as required under 20 C.F.R. § 416.929—and he found Damian's testimony "unpersuasive in light of the relevant medical evidence of record." (*Id.* at 25.) Judge Goodale explained: "[W]hile records show that the claimant has reported having past history of chronic bronchitis, . . . treatment records document few, if any, complaints by [Damian] of any shortness of breath or other respiratory issues during the relevant period since his application date." (*Id.* at 20 (citing AR at 329).) He further noted that Damian, per his own testimony, "remains able to handle personal needs like showering and getting dressed independently" and "remains able to do his own laundry," albeit at a slower pace. (*Id.* at 25.) Judge Goodale similarly highlighted Damian's testimony that "he is able to prepare coffee or tea and make sandwiches," and he "sit[s] down to make sandwiches and sit[s] while the water is coming to a boil." (*Id.*)

Judge Goodale thus considered Damian's reported shortness of breath, evaluated whether and how this symptom limits Damian's capacity for work, explained his reasons for his credibility determination, and simply reached a conclusion with which Damian now disagrees. *See Scouten v. Comm'r of Soc. Sec.*, 722 F. App'x 288, 291 (3d Cir. 2018). That conclusion is entitled to substantial deference. *See Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 808 (3d Cir. 2018) ("The ALJ could quite properly discount subjective complaints that were not otherwise supported by the record. Accordingly, we defer to his credibility determination." (cleaned up));

18

*Kimberlee K. v. Comm'r of Soc. Sec.*, No. 20-4493, 2024 WL 989821, at \*7 (D.N.J. Mar. 7, 2024) ("While [the ALJ] did not credit each of [Plaintiff's] claims of pain, she adequately explained her reason for not doing so. Likewise, [the ALJ] fully discussed [Plaintiff's] history of steroid injections and physical therapy to manage her pain and accounted for them in her RFC determination. Therefore, [Plaintiff's] claim against the RFC assessment *'impermissibly seeks the Court to re-weigh the evidence' and find in [Plaintiff's] favor*." (citations omitted)).[8]

Damian's contention that "[a] proper symptom analysis would reveal that [Damian] is limited to a narrow range of sedentary activities" does not alter this conclusion. (Pl. Br. at 27.) "Even if there [were] *some* evidence in the record to support a more sedentary RFC, 'the ALJ's decision may not be set aside merely because a reviewing court would have reached a different decision.'" *Edwin J.*, 2025 WL 2506278, at \*7 (cleaned up) (citing *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007)). The relevant inquiry is a narrow one: "*not* whether the ALJ could have reasonably made a different finding based on the record" but "[r]ather . . . whether the ALJ's *actual findings* are supported by substantial record evidence." *Simmonds v. Heckler*, 807

---

[8] With respect to his shortness of breath, Damian also asserts that "[t]he medications listed in [treatment] records [i.e., inhalers and nebulizers mentioned above] provide objective evidence of the existence of a respiratory impairment that is known to cause shortness of breath." (Pl. Br. at 24.) This argument fails for multiple reasons. First, Damian confuses the relevant question. The existence of objective evidence of a physical impairment that could reasonably cause the claimant's symptom is the focus of the first step of the ALJ's two-step analysis of a claimant's reported symptoms. *See* 20 C.F.R. § 416.929(b). Judge Goodale agreed that Damian's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," including shortness of breath, and he proceeded to consider Damian's subjective statements only after finding that threshold question satisfied. (AR at 25); *see* 20 C.F.R. § 416.929(a). The question at the second step is the one in dispute—whether, based on all the record evidence, Damian's shortness of breath limits him to the extent he reports. *See* 20 C.F.R. § 416.929(c). Taking a medication for a given impairment does not itself establish the impairment-related symptoms a person experiences, let alone the unique ways those symptoms functionally limit the individual. *See supra* note 7. Further, even assuming this treatment record supported Damian's subjective statements about his shortness of breath, the existence of some evidence that supports a claimant's statements does not undermine the ALJ's decision to not credit, or partly credit, those subjective complaints. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007). So long as substantial evidence supports the ALJ's credibility determination, it is upheld, regardless of whether a different determination was possible. *Id.*

19

F.2d 54, 58 (3d Cir. 1986) (emphasis added). That is, courts "must uphold the ALJ's findings—including credibility determinations—if they are supported by substantial evidence." *McGinnis v. Soc. Sec. Admin.*, 808 F. App'x 127, 129 (3d Cir. 2020) (per curiam). For the reasons explained, substantial evidence supports Judge Goodale's conclusions regarding Damian's symptoms, including shortness of breath and fatigue, and those conclusions must therefore be upheld.

### B.   DR. PETERSON'S PRIOR ADMINISTRATIVE MEDICAL FINDINGS

In determining Damian's RFC and finding him not disabled, Judge Goodale considered and found persuasive the prior administrative medical findings of state agency psychological consultant Dr. Peterson. (AR at 31–32); *see* 20 C.F.R. §§ 416.913a, 416.920c, 416.1016. Dr. Peterson examined Damian's file at the reconsideration level, completed the standard mental RFC assessment form used by state agency psychological consultants, and found Damian not disabled. (AR at 103–04, 106–08); *see Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634–36 (3d Cir. 2010) (describing standard RFC assessment form); POMS[9] DI 24510.060 (same). The Court begins with a summary of Dr. Peterson's opinions before addressing Damian's argument that Judge Goodale inadequately accounted for this PAMF.

First, Dr. Peterson determined that Damian is "moderately limited" in the "broad functional area" of concentration, persistence, and pace. (AR at 103); *see* 20 C.F.R. § 416.920a(c)(3)–(4); POMS DI 24583.005. Next, Dr. Peterson completed the "worksheet" portion of the form—a "fill-in-the-blank" and "checklist" section intended to "aid" the state agency consultant in making his eventual RFC finding. POMS DI 24510.060(B)(2)(a); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x

---

[9] As the Third Circuit has explained, the Social Security Administration's Program Operations Manual System ("POMS") is "the publicly available operating instructions for processing Social Security claims" which "establishes the generally understood meaning of terms within the social security regulatory framework." *Hess*, 931 F.3d at 212 n.15 (quoting *Kelley v. Comm'r of Soc. Sec.*, 566 F.3d 347, 350 n.7 (3d Cir. 2009)). "DI" in the above citation refers to the Disability Insurance section of the POMS.

20

357, 360 & n.14 (3d Cir. 2015); (*see* AR at 106 ("The questions below help determine the individual's ability to perform sustained work activities. However, the *actual* mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (emphasis added))). In that "worksheet" section, Dr. Peterson rated Damian's limitations with respect to eight specific attributes ("mental function items") under the overarching category of concentration and persistence. (AR at 107); *see* POMS DI 24510.060(B)(2)(b). Dr. Peterson found Damian "moderately limited" with respect to three of the eight attributes: (1) maintaining attention and concentration for extended periods, (2) performing activities within a schedule and maintaining regular attendance and punctuality within customary tolerances, and (3) completing a normal workday/workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (AR at 107.) He found Damian "not significantly limited" with respect to four mental function items—his abilities to "carry out very short and simple instructions," "sustain an ordinary routine without special supervision," "work in coordination with or in proximity to others without being distracted by them," and "make simple work-related decisions"—and found there was "no evidence of limitation" in Damian's ability to "carry out detailed instructions." (*Id.*) Dr. Peterson did not rate Damian as "markedly limited" (the highest possible limitation rating) for any aspect of concentration and persistence.[10] (*Id.*); *see* POMS DI

---

[10] Nor did Dr. Peterson rate Damian as "markedly limited" with respect to *any* functional limitation category. (AR at 107.) For the attributes under the category of understanding and memory, Dr. Peterson found Damian "not significantly limited" or found "no evidence of limitation." (*Id.*; *see also id.* at 103 (on the five-point scale from "none" to "extreme," rating "none" for the category of understanding, remembering, or applying information).) Under the category of adaptation, Dr. Peterson found Damian "moderately limited" with respect to one attribute ("[t]he ability to respond appropriately to changes in the work setting") but otherwise found Damian "not significantly limited" or found "no evidence of limitation" as to the three other attributes in that category. (*Id.* at 107.) Finally, Dr. Peterson found that Damian has no social interaction limitations, so he did not rate the attributes under that category. (*Id.*)

24510.060(B)(2)(c).

Finally, Dr. Peterson completed the "narrative" portion of the RFC assessment form, i.e., his "actual" mental RFC assessment. (AR at 106); *Smith*, 631 F.3d at 637; *see* POMS DI 24510.060(B)(4). Dr. Peterson opined that Damian "independently manage[s] personal care; cooks; light [household] chores; travels independently; shops; [and] manages money." (AR at 103–04, 106.) He then concluded that Damian "retains sufficient residual mental capacity for simple, repetitive work." (*Id.* at 104.)

Damian focuses on Dr. Peterson's findings that Damian is "moderately limited" with respect to three aspects of concentration and persistence—his abilities to "maintain attention and concentration for extended periods"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.* at 107; *see* Pl. Br. at 27–32.) According to Damian, those limitations would "necessarily" result in "time off-task or absenteeism" that would make him unemployable. (Pl. Br. at 29.) Damian in turn argues that, because Judge Goodale found Dr. Peterson's opinions persuasive, he erred in not including off-task time and unscheduled absences in Damian's RFC determination. (*Id.*) The Court disagrees.

As an initial matter, the aspects of Dr. Peterson's PAMF on which Damian focuses—Dr. Peterson's moderate ratings as to three mental function items within the category of concentration and persistence—are separate from Dr. Peterson's formal RFC opinion. *See* POMS DI 24510.060. As explained, Dr. Peterson made those moderate limitations ratings in the "worksheet" portion of the state agency consultant form. (AR at 107.) "ALJs are not required to give *any* weight to these fill-in-the-blank and checklist portions of RFC assessments and . . . their focus instead should be

on the narrative portions of the assessments where the medical experts expound on their opinions."

*Wise*, 626 F. App'x at 360 (emphasis added); *see Smith*, 631 F.3d at 636–37 (collecting cases).

Thus, Judge Goodale "had no obligation to include in the RFC any of the moderate limitations

contained in the worksheet." *Jason C. v. Bisignano*, No. 24-6873, 2026 WL 851213, at *16 (D.N.J.

Mar. 26, 2026) (citing *Wise*, 626 F. App'x at 360); *see Sicker v. Comm'r of Soc. Sec.*, No. 23-250,

2024 WL 4199015, at *1 n.1 (W.D. Pa. Sept. 16, 2024).

What is more, nowhere in Dr. Peterson's assessment—whether in the worksheet portion

with checklist ratings or in the narrative section containing his RFC conclusions—did Dr. Peterson

mention or opine on Damian's need for off-task time or unscheduled absences. (*See* AR at 103–

04, 106–08.) Damian contends that the "moderate" limitations in concentration and persistence

identified by Dr. Peterson "would necessarily produce time off-task or absenteeism." (Pl. Br. at

29.) That conclusion does not follow. Moderate limitations in these areas are not defined in terms

of off-task time or absenteeism. The relevant statutory provisions, regulations, and agency

guidelines are far more general. *See, e.g.*, 20 C.F.R. § 416.920a(c)(4) (stating only that the severity

of a limitation in a given functional area is rated "us[ing] the following five-point scale: None,

mild, moderate, marked, and extreme"); POMS DI 34001.032(F)(2)(c) (defining "moderate

limitation" to mean that "functioning in this area independently, appropriately, effectively, and on

a sustained basis is fair"). Damian cites no authority bridging this gap between moderate

concentration and persistence limitations on the one hand and off-task time and absenteeism on

the other.[11] (*E.g.*, Pl. Br. at 31 (asserting, without support, that "[a] moderate limitation in

---

[11] The only support Damian offers is inapposite. For example, he cites POMS DI 25020.010(B)(3)(d) as support for the proposition that "[t]he mental abilities needed to perform even unskilled work include the ability to maintain attention for extended periods of 2-hour segments." (Pl. Br. at 29.) That is true. *See* POMS DI 25020.010(B)(3)(d) (explaining that "unskilled" work requires "the ability to . . . [m]aintain attention for extended periods of 2-hour segments (concentration is not critical)"). However, that source nowhere provides that *moderate concentration and persistence limitations* equate to an inability to maintain

23

maintaining punctuality and attendance would lead to some amount of time off task and unscheduled absences").) There can be no error in Judge Goodale omitting RFC limitations that Dr. Peterson did not himself address and that do not follow from the mental RFC assessment he made. *See Kuhl v. Saul*, No. 18-3337, 2020 WL 6537198, at *10 (D.N.J. Nov. 6, 2020) ("[A]n ALJ need include only 'credibly established' limitations, *i.e.*, limitations 'that are medically supported and otherwise uncontroverted in the record.'" (quoting *Rutherford*, 399 F.3d at 554)); *cf. Tricia W. v. Comm'r of Soc. Sec.*, No. 24-11499, 2025 WL 3033994, at *7 n.11 (D.N.J. Oct. 30, 2025) ("To the extent Plaintiff argues that the error is the failure to explain why the ALJ departed from Dr. Patel's 'moderate' limitations findings despite finding them persuasive, that argument similarly falters. First, it is not clear that the ALJ did deviate from this finding. Plaintiff does not explain why a 'moderate' limitations finding is irreconcilable with the RFC the ALJ adopted." (emphasis and citation omitted)).

Furthermore, Judge Goodale had no obligation to address each individual finding included in Dr. Peterson's PAMF. *See* 20 C.F.R. § 416.920c(b)(1) ("[ALJs] are not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Sicker*, 2024 WL 4199015, at *1 n.1 (rejecting claimant's same argument that ALJ "had to explain why he left certain restrictions in the state psychological consultants' opinions out of the RFC, especially those regarding his [moderate] limitations in maintaining attention and concentration, performing within a schedule with customary attendance and punctuality, [and] completing a normal work week," and concluding that it was "not necessary [for ALJ] to parrot the findings of the state psychological consultants in Section I [the worksheet section] regarding moderate limitations verbatim into the RFC"); *Philips v. Barnhart*, 91 F. App'x

---

attention for 2-hour segments.

775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it." (citation omitted)); *see also Redenbaugh v. Dudek*, No. 24-205, 2025 WL 964020, at *1 n.2 (W.D. Pa. Mar. 31, 2025) ("The ALJ did not err by failing to address two of Dr. Hasselman's four opinions, as the regulations only require that the ALJ provide 'source level' analysis where the persuasiveness of the medical source is evaluated rather than each medical opinion individually.").

Nor was Judge Goodale required to incorporate into his RFC determination every limitation identified by a given medical source, including one he found persuasive. *Tricia W.*, 2025 WL 3033994, at *7 ("Even if the ALJ did fail to incorporate Dr. Patel's sub-category finding, Plaintiff's argument is unavailing. . . . [T]he ALJ was not required to adopt each of Dr. Patel's sub-category ratings into her RFC finding solely because the ALJ found Dr. Patel's opinion on the 'Concentration and Persistence' category persuasive, and the ALJ was also not required to adopt Dr. Patel's opinion on the category as a whole."); *Myrick v. Dudek*, No. 23-1924, 2025 WL 1674485, at *8 (M.D. Pa. Apr. 21, 2025) ("An ALJ . . . is under no obligation to model a residual functional capacity assessment after any medical opinion, including those deemed persuasive." (citing *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986)); *Sicker*, 2024 WL 4199015, at *1 n.1 (same). It is the ALJ, not the state agency consultants (or any physician), who "must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361; *see Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight. On the contrary, the

25

controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner." (citing 20 C.F.R. §§ 416.927(d)(2), 416.946(c))).

Under the applicable law, Judge Goodale was required to consider the medical opinions and PAMFs in the record, explain the persuasiveness of each, and "provide a 'logical bridge' between the evidence and [his] conclusions." *Edwin J.*, 2025 WL 2506278, at *6 (quoting *Peter G. v. Comm'r of Soc. Sec.*, No. 23-3797, 2024 WL 3518117, at *9 (D.N.J. July 24, 2024)); *see* 20 C.F.R. § 416.920c. Judge Goodale satisfied these requirements—and his RFC determination was in fact consistent with Dr. Peterson's opinions.

Like Dr. Peterson, Judge Goodale concluded that, "[w]ith regard to concentrating, persisting or maintaining pace, [Damian] has a moderate limitation." (AR at 22.) His RFC determination in turn accounted for those moderate limitations; Judge Goodale, like Dr. Peterson, found that Damian should be restricted to simple, repetitive work, specifically "simple, routine, repetitive work tasks involving only simple work-related decisions." (*Id.* at 23–24; *see id.* at 24 (additionally limiting Damian to no "assembly-line type work (i.e., [no] work in close tandem with coworkers at a pace that is outwardly set)" and "no more than occasional changes in the work setting")); *Sicker*, 2024 WL 4199015, at *1 n.1 ("The restrictions contained in the RFC fairly accounted for Plaintiff's moderate limitations in concentrating, maintaining pace, etc., by limiting Plaintiff to work outside of a production-rate environment and that required only simple tasks, decisions, and instructions."); *Hess*, 931 F.3d at 210–11 ("A limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions.' . . . [A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'"); *see also Jason*

26

*C.*, 2026 WL 851213, at *16–17 (rejecting claimant's identical argument on similar facts where ALJ's RFC included "simple work" limitation—i.e., finding that ALJ had adequately accounted for and addressed state agency consultants' opinions, disagreeing that consultants' moderate limitations ratings as to same concentration attributes as here required specific off-task time or absenteeism limitations in ALJ's RFC, further disagreeing that ALJ had to "include in the RFC any of the moderate limitations contained in the worksheet," and reasoning that, in any event, consultants' narrative section limitation to simple work, which ALJ likewise included in RFC determination, was consistent with those moderate concentration limitations).

Judge Goodale likewise sufficiently explained his conclusions and supported them with substantial evidence. In finding Damian moderately limited in concentration, persistence, and pace, Judge Goodale noted that the consultative examiners who personally examined Damian found that he was "unable to complete serial seven subtractions, but . . . able to complete simple addition and subtraction problems" and "able to spell the word 'table' forwards and backwards." (AR at 22–23; *see id.* at 1355 (February 2023 consultative psychological evaluation) ("[Damian's] fund of knowledge regarding the president is 3/3. His immediate recall is 3/3. His short-term memory shows that he is unable to recall anything out of three after 5 minutes. His long-term memory is good.").) Judge Goodale reiterated Damian's own statements that "he continues to watch television, and . . . he generally finishes things that he starts." (*Id.* at 23.) In the same discussion, Judge Goodale further noted that "throughout the relevant period at issue, records show that the claimant's mental health treatment providers and primary care provider have repeatedly observed him to exhibit intact cognitive functioning." (*Id.*) In explaining his RFC determination, Judge Goodale emphasized, as explained above and as found by Dr. Peterson, that "despite his impairments, the claimant has reported that he is able to cook and do household chores, including

27

cleaning and laundry, and testified that he is able to bathe and dress himself independently." (*Id.* at 32; *see id.* at 23, 25, 27–30.)

Judge Goodale also explained why Dr. Peterson's opinions were consistent with and supported by the other record evidence.[12] He summarized that Damian's mental health treatment providers "have repeatedly observed him to . . . [have] normal thought processes and perceptual functioning, intact cognitive functioning, and fair or good insight and judgment"; that his primary care provider "has repeatedly observed him to . . . [have] intact cognitive functioning"; and that Damian "reported that he follows instructions very well." (*Id.* at 32.) In short, Judge Goodale's conclusions as to Damian's appropriate RFC limitations, in light of Dr. Peterson's opinions and the other record evidence, were properly explained and supported by substantial evidence. *See Long v. Kijakazi*, No. 20-6336, 2022 WL 1204131, at *14 (E.D. Pa. Apr. 22, 2022) (concluding that ALJ provided valid explanation for finding claimant capable of performing "simple tasks" where ALJ "repeatedly pointed out Plaintiff's 'normal' mental status examinations," "emphasized Plaintiff's [activities of daily living], which included . . . house cleaning, woodworking, laundry and shopping"); *Delaine M. v. Bisignano*, No. 24-1108, 2026 WL 822910, at *15–17 (D.N.J. Mar. 19, 2026) (similarly finding that ALJ's RFC limitation to simple, routine tasks was adequately explained and supported by substantial evidence); *Hess*, 931 F.3d at 213–15; *see also Lawrence v.*

---

[12] In summarizing his argument regarding Dr. Peterson's PAMF, Damian asserts that Judge Goodale "failed to do the legally required consistency and supportability analysis of [Dr. Peterson's] medical opinions." (Pl. Br. at 27.) This argument echoes Damian's first argument, *see supra* Section III.A, that Judge Goodale "did not" evaluate the intensity and persistence of his fatigue and shortness of breath. That is, Damian says in conclusory fashion that Judge Goodale *failed to apply* the required legal frameworks (consistency and supportability here; limiting effects above) while ultimately disputing the *conclusions* Judge Goodale made pursuant to those frameworks. For the reasons explained, Judge Goodale explicitly and adequately analyzed the supportability and consistency of Dr. Peterson's opinions as required under 20 C.F.R. § 416.920c. (AR at 31–32); *see* 20 C.F.R. § 416.920c(a), (c) (explaining the two "most important factors" for an ALJ to consider: supportability and consistency); *see also Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (explaining that, with one exception not applicable here, ALJs need only discuss the supportability and consistency factors).

*Comm'r of Soc. Sec.*, No. 21-1239, 2022 WL 17093943, at *6 (M.D. Pa. Nov. 21, 2022).

Accordingly, and for the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: May 18, 2026

30